UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

**FOR PUBLICATION**

-------------------------------------------------------------X

In re:

BARTON MARK PERLBINDER,

Debtor.

Chapter 11

Case No. 25-73317-spg

-------------------------------------------------------------X

REPLACEMENT ASSOCIATES, LLC,

Plaintiff,

Adv. Pro. No. 25-08094-spg

v.

210 EAST 86TH STREET CORP.; BARTON MARK PERLBINDER; MUFFY FLOURET as Trustee of the Muffy Flouret 2012 Family Trust and as Trustee of the Mark Perlbinder 2023 Irrevocable Trust; STEPHEN PERLBINDER; ASTRID SABELLAROSA as Trustee of the Article 4 Trust under ASR 2020 Family Trust and as Trustee of the Stephen Perlbinder 2016 Family Trust F/B/O Astrid Sabellarosa; ANDREA JO STEIN, as Trustee of the Article 4 Trust Under AJS 2020 Family Trust and as Trustee of the Stephen Perlbinder 2016 Trust F/B/O Andrea Jo Stein,

Defendants.

-------------------------------------------------------------X

BARTON MARK PERLBINDER,

Plaintiff,

Adv. Pro. No. 25-08098-spg

v.

MUFFY FLOURET, Solely in her capacity as Trustee of the Mark Perlbinder 2023 Irrevocable Trust; MUFFY FLOURET, Solely in her capacity as Trustee of the Mark Perlbinder 2023 Investment Trust; and XAVIER FLOURET, Solely in his capacity as Trustee of the BMDGP 2023 Trust,

Defendants.

-------------------------------------------------------------X

--------------------------------------------------------------X
REPLACEMENT ASSOCIATES, LLC,

Plaintiff, Adv. Pro. No. 25-08101-spg

v.

BARTON MARK PERLBINDER,

Defendant.
--------------------------------------------------------------X
ALBERT SHEELER,

Plaintiff, Adv. Pro. No. 26-08006-spg

v.

MARK PERLBINDER,

Defendant.
--------------------------------------------------------------X

**MEMORANDUM OPINION**

**Appearances:**

KASEN & KASEN, P.C.
*Counsel to the Debtor and*
*Debtor-in-Possession*
115 Broadway, 5th Floor
New York, New York 10006
By: Michael J. Kasen, Esq.

PHELAN LAW, P.C.
*Special Counsel to the Debtor and*
*Debtor-in-Possession*
1177 Avenue of the Americas, 5th Floor
New York, New York 10036
By: Daniel O. Phelan, Esq.

FARRELL FRITZ, P.C.
*Attorneys for Muffy Flouret, as*
*Trustee of the Mark Perlbinder*
*2023 Irrevocable Trust*
400 RXR Plaza
Uniondale, New York 11556
By: Patrick Collins, Esq.
John R. Morken, Esq.
Darren A. Pascarella, Esq.
Brett Cahn, Esq.

FORCHELLI DEEGAN TERRANA LLP
*Attorneys for Dara Perlbinder*
333 Earle Ovington Boulevard, Suite 1010
Uniondale, New York 11553
By: Gerard R. Luckman, Esq.

STEIN ADLER DABAH & ZELKOWITZ LLP
*Attorneys for Creditors Stephen Perlbinder;*
*Astrid Sabellarosa, as Trustee of the Julius*
*Perlbinder Family Trust, the Article 4 Trust*
*Under ASR 2020 Family Trust, and the*
*Stephen Perlbinder 2016 Family Trust f/b/o*
*Astrid Sabellarosa; and Andrea Jo Stein as*
*Trustee of the Article 4 Trust Under AJS 2020*
*Family Trust and Stephen Perlbinder 2016*
*Trust f/b/o Andrea Jo Stein*
936 Broadway, 5th Floor
New York, New York 10010
By: Adam J. Stein, Esq.
Matteo J. Rosselli, Esq.

GALLET DREYER & BERKEY, LLP
*Attorneys for William West and Joyce*
*West, Jane West, and Stacy West Clark,*
*as Trustees of The Non-Exempt Martial*
*Trust F/B/O Joyce West*
845 Third Avenue, 5th Floor
New York, New York 10022
By: David L. Berkey, Esq.
Maximilian T. Ferlesch, Esq.

OLSHAN FROME WOLOSKY LLP
*Attorneys for Creditors ASR 2020*
*Family Trust and AJS 2020 Family Trust*
1325 Avenue of the Americas
New York, New York 10019
By: Jonathan T. Koevary, Esq.

TARTER KRINSKY & DROGIN LLP
*Attorneys for Board of Managers of*
*411 East 53rd Street Condominium*
1350 Broadway, 11th Floor
New York, New York 10018
By: Scott S. Markowitz, Esq.
Alex Spizz, Esq.
John Manchester, Esq.

SILLS CUMMIS & GROSS P.C.
*Attorneys for Replacement Associates, LLC*
101 Park Avenue, 28th Floor
New York, New York 10178
By: S. Jason Teele, Esq.

ROSENBERG & ESTIS, P.C.
*Self-Represented*
733 Third Avenue
New York, New York 10017
By: Andrew Gottesman, Esq.
Justin S. Weitzman, Esq.

LETITIA JAMES, ATTORNEY GENERAL
STATE OF NEW YORK
*Attorney for New York State*
*Department of Taxation & Finance*
28 Liberty Street, 17th Floor
New York, New York 10005
By: Enid Nagler Stuart, Esq.

WILLIAM K. HARRINGTON,
UNITED STATES TRUSTEE FOR REGION 2
*Office of the United States Trustee*
Alfonse M. D'Amato Federal Courthouse
560 Federal Plaza, Room 560
Central Islip, New York 11722
By: Christine H. Black, Esq.

# TABLE OF CONTENTS


INTRODUCTION……………………………………………………………………………...1

BACKGROUND……………………………………………………………………………….3

DISCUSSION…………………………………………………………………….……….…7

I. INITIAL SUSPENSION..…………………………………….….……………………..8

A. Abstention Under 11 U.S.C. § 305(a)………………………………….………..8

i. *Factor 1 — Economy and Efficiency of Administration*………………...…………………..……………………....9

ii. *Factor 2 — Existence of an Alternative Forum*…………………………11

iii. *Factors 3, 4, 5, and 6 — Necessity of Federal Forum; Alternative Means to Achieve an Equitable Result; Possibility of an Out-of-Court Arrangement; and Status of Non-Federal Insolvency Proceedings*………………………….15

iv. *Factor 7 — Purpose of the Bankruptcy*…………………………….……18

B. Abstention by Suspension Instead of Dismissal …………………………………19

II. CONTINUED SUSPENSION……………………………….…..………...…………22

A. The Present Circumstances Continue to Favor Abstention……………………..……22

i. *Factors 1 and 2 — Economy and Efficiency of Administration; and Existence of an Alternative Forum*………………...……………………23

ii. *Factors 3, 4, 5, and 6 — Necessity of Federal Forum; Alternative Means to Achieve an Equitable Result; Possibility of an Out-of-Court Arrangement; and Status of Non-Federal Insolvency Proceedings*………………………….26

iii. *Factor 7 — Purpose of the Bankruptcy*…………………………….……27

B. The Present Circumstances Favor Continued Suspension Instead of Dismissal ……………………………………………..……….......27

CONCLUSION……………………………………………………….……………………30

**THE HONORABLE SHERYL P. GIUGLIANO**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

Before the Court is the motion of Muffy Flouret, as Trustee of the Mark Perlbinder 2023 Irrevocable Trust (the "Trustee"), seeking dismissal of the chapter 11 bankruptcy case of Barton Mark Perlbinder (the "Debtor") for cause and/or under principles of abstention [ECF No. 14] (the "Motion"). The Motion is joined by the following creditors pursuant to joinders formally filed on the docket of the Debtor's case (collectively, the "Joinder Parties"): (i) Dara Perlbinder [ECF No. 30]; (ii) Stephen Perlbinder; Astrid Sabellarosa, as Trustee of the Julius Perlbinder Family Trust, the Article 4 Trust Under ASR 2020 Family Trust, and the Stephen Perlbinder 2016 Family Trust f/b/o Astrid Sabellarosa; Andrea Jo Stein as Trustee of the Article 4 Trust Under AJS 2020 Family Trust and Stephen Perlbinder 2016 Trust f/b/o Andrea Jo Stein; and the ASR 2020 Family Trust and AJS 2020 Family Trust [ECF No. 66]; and (iii) William West and Joyce West, Jane West, and Stacy West Clark, as Trustees of The Non-Exempt Martial Trust f/b/o Joyce West [ECF No. 78]. The Court also notes the following parties who did not file papers joining the Motion but interposed their support during oral argument (together, the "Proponent Parties"): (i) Rosenberg & Estis, P.C.; and (ii) the Office of the United States Trustee (the "U.S. Trustee"). The Motion is opposed by the Debtor [ECF No. 34] and the Board of Managers of 411 East 53rd Street Condominium (the "Board of Managers") [ECF No. 32], who filed formal objections to the Motion, as well as Replacement Associates, LLC, who interposed its objection during oral argument (collectively, the "Objecting Parties").

Oral argument on the Motion first took place on January 30, 2026 (the "January 30 Hearing"), with appearances made by the foregoing parties through counsel. Following the January 30 Hearing, the Court held a hearing on February 9, 2026 (the "February 9 Hearing"), at

which the Court read into the record the Court's oral ruling with respect to that portion of the Motion requesting this Court to abstain under 11 U.S.C. § 305(a). Specifically, after due deliberation, the Court found that sufficient grounds existed to abstain and suspend all of the above-captioned proceedings for a finite period pursuant to 11 U.S.C. §§ 105(a) and 305(a)(1), and, accordingly, entered an Order to that effect on February 11, 2026 [ECF No. 94] (the "Suspension Order").

The Suspension Order provided, in relevant part, that all proceedings herein were suspended as of February 11, 2026, subject to a status hearing scheduled to be held on September 16, 2026 (the "Status Hearing"), at which time the Court would consider whether to dismiss the chapter 11 case, reactivate all proceedings, or continue the suspension for another finite period. The Suspension Order also clarified that the Court would reserve any ruling with respect to that portion of the Motion seeking dismissal for cause under 11 U.S.C. § 1112(b) until after the Status Hearing.

Pursuant to the Suspension Order, status reports were filed in advance of the Status Hearing as follows (collectively, the "Status Reports") by: (i) Replacement Associates, LLC [ECF No. 104]; (ii) the Debtor [ECF No. 105]; (iii) the Trustee [ECF Nos. 107 and 109]; and (iv) the ASR 2020 Family Trust and AJS 2020 Family Trust [ECF No. 108]. Those parties that appeared at the January 30 Hearing also appeared at the Status Hearing, through counsel, with the addition of the New York State Department of Taxation & Finance. The Court then deemed the matter submitted and "So-Ordered" the record to extend the Suspension Period (defined below) and the provisions of the Suspension Order in full force and effect pending a decision by the Court.

The Court has carefully reviewed all the papers forming the record of the Motion, including the Status Reports, and thoughtfully considered the oral arguments interposed by the appearing

parties, including the status updates represented to the Court at the Status Hearing. After due deliberation, the Court finds that, for the reasons to be set forth, sufficient grounds exist to further abstain and suspend all proceedings in this case for another finite period pursuant to 11 U.S.C. §§ 105(a) and 305(a)(1).

In the interests of judicial economy and centralizing the record and core arguments to date, this memorandum opinion will separately address the Court's reasoning for both the initial suspension[1] and the continued suspension. The Court's discussion of the initial suspension is effectively a transcription of the oral ruling read at the February 9 Hearing, while discussion of the continued suspension will address the new developments and arguments presented in the Status Reports and at the Status Hearing.

## BACKGROUND

The Debtor is an individual and third-generation real estate developer who accumulated a vast amount of wealth through the acquisition of various real properties located in New York City and Long Island, including a large oceanfront property located at 615 Daniels Lane, Sagaponack, New York (the "Sagaponack Property"), which the Debtor maintained as his primary residence. [ECF No. 32 at 2; ECF No. 14 at 4]. On or about August 28, 2023, the Debtor transferred the bulk of his wealth, including the Sagaponack Property, to the Mark Perlbinder 2023 Irrevocable Trust (the "Trust"), and Muffy Flouret agreed to act as the Trustee. [ECF No. 14 at 2-3]. The Debtor values the assets transferred to the Trust to be worth at least $858 million. [*Id.* at 2 n.1].

The Trust itself was formed to serve various purposes, including the important purpose of facilitating an efficient means to pay the Debtor's debts. [*Id.* at 2]. The Trust specifically directs

[1] The Suspension Order provided that the Court's oral ruling at the February 9 Hearing would be followed by a written decision.

the Trustee to use the proceeds from the sale of the Trust's assets to pay the "Settlor's Existing Debts," which contemplates all enforceable obligations of the settlor (*i.e.*, the Debtor), including: (i) tax obligations; (ii) Dara Perlbinder; (iii) Liliane Angeli; (iv) four identified law firms; and (v) credit card balances. [*Id*. at 5]. The Trust also permits the Trustee to sell the Sagaponack Property if any one of certain contingencies were to occur, and several did occur, including the Debtor's execution of an agreement directing the Trustee to sell the Sagaponack Property. [*Id*. at 5].

The Trust and the actions undertaken by the Trustee pursuant to her fiduciary role become embroiled in several contentious litigations before the Suffolk County Surrogate's Court (the "Surrogate's Court"), including: (i) a proceeding seeking to unwind the Trust and remove the Trustee from her fiduciary role; (ii) the Trustee's proceeding to compel the Debtor to vacate the Sagaponack Property so that it can be sold for the benefit of creditors (the "Possession Proceeding"); (iii) the Trustee's petition to approve her accounting showing all transactions of the Trust from its creation through March 2025; and (iv) a proceeding brought by the Debtor's attorneys for payment of fees from the Trust. [*Id*. at 6-7]. On or about August 22, 2025, the Surrogate's Court "So-Ordered" a stipulation between the parties in the Possession Proceeding, agreeing to fast-track a summary ruling therein with all of the other Surrogate's Court proceedings to be held in abeyance pending determination or resolution of the Possession Proceeding (the "Possession Proceeding Stipulation"). [*Id*. at 7].

In addition to the Surrogate's Court proceedings, there were several other actions commenced against the Debtor in New York County Supreme Court. [*Id*. at 11-12]. These pending litigations form most of the claims against the Debtor (albeit, unliquidated), which presently total over $472 million. [ECF No. 107 at 5; Jan. 30, 2026 Hr'g Tr., ECF No. 96 at 23]. It has been asserted that the Trust is sufficiently funded to satisfy them in whole. [*Id*.].

The Trustee started the process of liquidating the Trust assets. [ECF No. 109 at 3]. The Trust's interests in certain entities that own New York City real estate are subject to a dissolution proceeding in New York County Supreme Court and are under the control of a receiver (the "Receiver") authorized by a receivership order to marshal and liquidate the assets of those entities. [ECF No. 14 at 12].

On August 28, 2025 (the "Petition Date"), exactly two years after the Debtor's assets were transferred to the Trust, the Debtor commenced this chapter 11 case. [*Id*. at 17]. This case was first before Chief Judge Alan S. Trust and was reassigned by Order entered November 26, 2025 [ECF No. 47].

On October 7, 2025, the Debtor commenced an adversary proceeding against the Trust [Adv. Pro. No. 25-08098-spg] (the "Avoidance Action") to avoid and recover the assets transferred to the Trust as a constructively fraudulent conveyance under 11 U.S.C. § 548. [ECF No. 32 at 5]. Having no other significant assets under the Debtor's direct ownership, the Avoidance Action claims are essential to the Debtor's prospects for a successful reorganization in chapter 11, and he has stated he will use them to reorganize his debts. [ECF No. 34 at 2, 5].

There are three other related adversary proceedings: (i) an action commenced in this Court by Replacement Associates, LLC against the Debtor [Adv. Pro. No. 25-08101-spg]; (ii) an action commenced against the Debtor and other parties removed to this Court by Replacement Associates, LLC [Adv. Pro. No. 25-08094-spg]; and (iii) a non-dischargeability action commenced in this Court by Albert Sheeler against the Debtor [Adv. Pro. No. 26-08006-spg]. [ECF No. 17, 27, 68].

On September 22, 2025, the Trustee filed the Motion seeking dismissal of the main bankruptcy proceeding, which was formally joined by the Joinder Parties. [ECF No. 14]. The Debtor and Board of Managers opposed the Motion in writing. [ECF No. 32, 34]. Oral argument

was held first held at the January 30 Hearing, and all the appearing parties were afforded a full and fair opportunity to participate and be heard. [*See* Jan. 30, 2026 Hr'g Tr., ECF No. 96]. After reading its oral ruling into the record at the February 9 Hearing, the Court entered the Suspension Order on February 11, 2026, suspending all proceedings under principles of abstention and scheduling the Status Hearing. [ECF No. 94].

Prior to the Status Hearing, the Status Reports were filed, updating the Court on the events that transpired during the time between the date of the Suspension Order's entry (the "Suspension Date") through the Status Hearing (the "Suspension Period") [ECF No. 104, 105, 108]. The Status Reports highlighted developments in certain key respects: (i) the Debtor surrendered possession of the Sagaponack Property, and the Possession Proceeding was discontinued with prejudice; (ii) the Trustee began marketing the Sagaponack Property for sale at a listing price of $79.5 million; (iii) the Trust arranged and made payments to satisfy the Debtor's debts with respect to certain legal fees; (iv) the Stephen Perlbinder creditors and the Trust reached an agreement on the structure of a tentative settlement of the principal family real estate disputes, which would resolve the largest creditor group's claims against the Debtor; (v) the Trust engaged in settlement discussions with the West creditors; and (vi) the Receiver attempted to settle the dispute with the Board of Managers. [ECF No. 105 at 3; ECF No. 108 at 1; ECF No. 107 at 2, 6, 8].

The Debtor's Status Report raised concerns with respect to the Trust's administration during the Suspension Period, including that the Trust has, among other things: (i) failed to pay any creditors despite demand for payment; (ii) failed to make mandatory distributions to the Debtor as required by the Trust, leaving the Debtor unable to afford basic living expenses; (iii) failed to address the Debtor's increasing debt burdens by letting additional taxes and penalties accrue; (iv) intentionally excluded the Debtor from settlement discussion and declined to provide the Debtor

with any updates; (v) failed to provide an updated accounting despite multiple demands; and (vi) denied the Debtor's access to funds that the Debtor maintains he is due as a beneficiary of his parents' estate. [ECF No. 105 at 2, 4-5, 9]. The Trustee addressed the Debtor's assertions with a responsive Report. [ECF No. 109].

The Status Hearing was held to consider whether to dismiss the Debtor's chapter 11 case, reactivate all proceedings, or continue the suspension for another finite period. [Sept. 16, 2026 Hr'g Tr., ECF No. 111 at 2]. Once again, at the Status Hearing, all the appearing parties were afforded a full and fair opportunity to participate and be heard. [*See id.*]. At the close of the Status Hearing, the Court "So-Ordered" the record to clarify that the Suspension Period would continue and the Suspension Order would remain in full force and effect pending a decision and further order of the Court. [*Id*. at 81].

**<u>DISCUSSION</u>**

As explained above, the Court separately addresses its reasoning for the initial suspension and the continued suspension. While the Suspension Order is presently under appeal, this Court treats its continuance of the Suspension Period as an action undertaken to enforce and implement the Suspension Order.[2] The Suspension Order specifically retained this Court's jurisdiction "to

---

[2] On February 25, 2026, Debtor's counsel filed a Motion for Leave to Appeal [ECF No. 97] and Notice of Appeal to the District Court [ECF No. 98] with the United States District Court for the Eastern District of New York, Case No. 26-mc-00750. The Court believes it is within its jurisdictional bounds to continue the suspension notwithstanding the appeal. The Court acknowledges the divestiture doctrine and its general principle that the filing of an appeal divests the lower court of control over the issue or matter on appeal. *See Dicola v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re Prudential Lines, Inc.)*, 170 B.R. 222, 243 (S.D.N.Y. 1994) (noting that the divestiture doctrine applies to appeals of bankruptcy court orders). The divestiture doctrine is not a creature of statute, but rather "rooted in concerns of judicial economy, crafted by courts to avoid confusion and inefficiency that would inevitably result if two courts at the same time handled the same issues in the same case." *United States v. Rodriguez-Rosado*, 909 F.3d 472, 477−78 (1st Cir. 2018) (internal citations omitted). "During the pendency of an appeal of a bankruptcy court order, . . . the bankruptcy court is not divested of jurisdiction to enforce or implement the order being appealed, nor is the bankruptcy court divested of jurisdiction to decide issues and proceedings different from and collateral to those involved in the appeal." *In re Sabine Oil & Gas Corp.*, 548 BR 674, 679 (Bankr. S.D.N.Y. 2016) (internal quotations omitted). This distinction "is most germane in the context of a Chapter 11

hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of th[e] Suspension Order" (Suspension Order, p. 6), including, but not limited to, consideration of whether to dismiss the chapter 11 case, reactivate all proceedings, or continue the suspension for another finite period. Furthermore, neither the Debtor nor any of the other Objecting Parties sought a stay of the Suspension Order's enforcement pending the appeal.

## I. INITIAL SUSPENSION

### A. Abstention Under 11 U.S.C. § 305(a)

Abstention, which is governed by 11 U.S.C. § 305(a), provides in relevant part that "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if — the interests of creditors and the debtor would be better served by such dismissal or suspension . . . ." 11 U.S.C. § 305(a)(1). While bankruptcy courts generally agree that abstention is an extraordinary remedy to be used sparingly (*see In re Nogin Commerce LLC*, 670 B.R. 711, 726 (Bankr. S.D.N.Y. 2025)), it is appropriate where the interests of both the debtor and its creditors would benefit from dismissal or suspension. *See In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 462-63 (Bankr. S.D.N.Y. 2008). The movant bears the burden of demonstrating that benefit. *See id.*

Courts in this Circuit generally apply a seven-factor test to determine whether to grant relief under 11 U.S.C. § 305(a), as follows: "(1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable

bankruptcy case which involves the court's issuance of innumerable orders involving a myriad of issues, one or more of which may be on appeal at any given moment." *In re Prudential Lines, Inc.*, 170 B.R. at 244.

distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought." *Monitor Single Lift*, 381 B.R. at 464-65; *see also In re Wythe Berry Fee Owner LLC*, No. 22-11340 (MG), 2023 WL 1786407, at *6 (Bankr. S.D.N.Y. Feb. 6, 2023). While all the foregoing factors are considered, they are not given equal weight in every case. *See Monitor Single Lift*, 381 B.R. at 465.

After thoughtful consideration, the Court found the factors, on balance, weighed in favor of abstention upon taking the Motion under submission after oral argument at the January 30 Hearing. The Court will address each factor in turn as applied to the facts forming the record at that time. The Court will then discuss its reasoning at that time for abstaining by suspension over dismissal.

### ***1. Factor 1 — Economy and Efficiency of Administration***

The Trustee, Joinder Parties, and Proponent Parties submitted that the first factor regarding economy and efficiency of administration favored abstention because the Trust already establishes an efficient and economical means to address the Debtor's debts. [Jan. 30, 2026 Hr'g Tr., ECF No. 96 at 21-22]. These parties noted that the Trustee already made significant progress in marketing the Sagaponack Property for sale and liquidating through a state court receivership the Debtor's interests in various limited liability companies that own real property throughout New York City. [*Id*. at 17, 23]. They stressed that but for the Debtor's various proceedings commenced to unwind the Trust, including this bankruptcy case, the Debtor's debts would have been effectively administered by operation of the Trust. [*Id.* at 103]. By way of example: (a) the Trustee and the

Debtor agreed to a briefing schedule for summary judgment in the Possession Proceeding, which, had it been followed, would have allowed the Surrogate's Court to quickly resolve the Debtor's occupancy of the Sagaponack Property; and (b) the Receiver had already started the process of marketing and selling various valuable real properties which will reduce secured debts of the Debtor and the Trust. [*Id*. at 17, 21, 23]. These parties also stressed the costliness and disruptive consequences of proceeding with this bankruptcy case, including professional fees on all sides. [*Id*. at 61]. The Trustee cited to *In re Traxcell Technologies, Inc.*, 657 B.R. 453 (Bankr. E.D. Tex. 2024) where the bankruptcy court granted abstention in favor of a state court proceeding where the debtor's assets were already positioned to be liquidated and distributed. [ECF No. 14 at 27].

The Objecting Parties submitted that the first factor disfavored abstention because the Debtor cannot economically and efficiently administer his debts outside of bankruptcy. [Jan. 30, 2026 Hr'g Tr., ECF No. 96 at 58-59]. The Objecting Parties argued that this Court is the only forum that could adjudicate the Debtor's avoidance claims under 11 U.S.C. § 548, restructure the Debtor's federal tax debts, and ensure that all of the Debtor's creditors received a full and fair opportunity to be heard and liquidate their claims in an expedient and efficient manner. [ECF No. 32 at 16-17; ECF No. 34 at 6]. The Board of Managers argued that the Trustee's reliance on *Traxcell* was inapposite, because unlike here where the Trust's longevity is uncertain, the *Traxcell* debtor was in the process of liquidating its assets pursuant to a receivership order. [*Id*. at 16 n.13].

As to this factor, the Court was persuaded that *Traxcell* is instructive. The *Traxcell* court reasoned that where liquidation and distribution of the debtor's assets were already set to take place outside bankruptcy, keeping the case in bankruptcy would likely hinder administrative economy and efficiency. *See* 657 B.R. at 146. The *Traxcell* court declined to keep the case in bankruptcy despite the debtor's pending appeal to reverse the receivership order. *See id.* at 465

(noting that the debtor's chances of successfully reversing the receivership order were "equally limited and speculative"). For these reasons, this Court found that the Trust (with the oversight of the Surrogate's Court and implementation of the receivership) offered, at that time, an efficient and economical means to address the Debtor's debts outside of bankruptcy, even if its longevity was subject to adjudication by the Surrogate's Court.

This Court also found that abstention served the interests of economy and efficiency as to the Debtor, not just his creditors. The inherent costs of administering a chapter 11 case are significant, and the Debtor's monthly operating reports indicated no income since the Petition Date. [Jan. 30, 2026 Hr'g Tr., ECF No. 96 at 43]. While the Debtor (and other Objecting Parties) may have felt that the added costs and administrative obligations of bankruptcy are the price of obtaining access to the tools and protections exclusive to this forum, the Debtor's lack of income could not be ignored. Furthermore, the Trustee's attorneys represented that there was already an established, fair and transparent claims allowance process in place. [*Id*. at 88-89]. Absent evidence to the contrary, it seemed not only redundant but wasteful, and perhaps even confusing to the Debtor and his creditors to allow a second, parallel claims process to exist.

Therefore, the Court found that the first factor favored abstention.

***2. Factor 2 — Existence of an Alternative Forum***

The Trustee, Joinder Parties, and Proponent Parties submitted that the second factor — the existence of an alternative forum — favored abstention because the state court proceedings, especially those pending before the Surrogate's Court, were well-situated to protect the interests of the Debtor and all stakeholders in the Trust, which they represented included all of the Debtor's creditors, not only those specifically enumerated in the Trust. [Jan. 30, 2026 Hr'g Tr., ECF No. 96 at 54]. These proceedings afford their own protections to creditors and procedural safeguards to

ensure informed adjudication of the disputes surrounding the Trust and orderly resolution of the creditors' claims. These parties cited to the applicability of New York Estates, Powers and Trust Law § 7-3.1(a), which provides that "[a] disposition in trust for the use of the creator is void as against the existing or subsequent creditors of the creator." (N.Y. EST. POWERS & TRUSTS LAW § 7-3.1(a)). These parties also cited to the orderly and transparent claims submission process in Surrogate's Court, which, as explained by Trustee's counsel during oral argument at the January 30 Hearing, allows creditors to submit their claims to the Trustee, who reviews them for validity and either authorizes their payment or submits them for adjudication by the Surrogate's Court. [Jan. 30, 2026 Hr'g Tr., ECF No. 96 at 94].

The Objecting Parties, on the other hand, argued that the pending state court proceedings were only equipped to determine the validity of the Trust and were otherwise unfit to protect the interests of the global creditor body — those that existed then and may exist in the future — or provide for an equitable distribution to these creditors. [ECF No. 34 at 6]. They argued that N.Y. EST. POWERS & TRUSTS LAW § 7-3.1(a) did not apply (although during oral argument at the January 30 Hearing, Debtor's counsel seemed to concede that he was not sure whether it applied), and they submitted that the Trust did not provide for the resolution of claims as to *all* creditors, only those expressly enumerated in the Trust: (i) tax obligations; (ii) Dara Perlbinder; (iii) Liliane Angeli; (iv) four identified law firms; and (v) credit card balances. [Jan. 30, 2026 Hr'g Tr., ECF No. 96 at 41, 86]. These select creditors would also be paid according to the Trust's priority scheme, which the Objecting Parties submitted diverged from the priority scheme under the Bankruptcy Code.

As to this factor, this Court expressed its respect for the unique competence and ability of the Surrogate's Court as a specialized tribunal to not only interpret but also administer the Trust. *See Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1216 (6th Cir. 1981) ("[F]ederal courts have

long abstained from exercising jurisdiction over the administration of trusts and estates in favor of state courts. The policies underlying federal abstention are especially relevant where an action is pending in state court over the administration of the same trust or estate involved in the federal suit."). This Court recognized that the Surrogate's Court is well-situated to efficiently and fairly adjudicate the disputed intricacies of the Trust, including, for example, the applicability of N.Y. EST. POWERS & TRUSTS LAW § 7-3.1(a). Moreover, pursuant to the Possession Proceeding Stipulation, the Debtor and the Trustee previously agreed to pause all proceedings before the Surrogate's Court, except the Possession Proceeding, and to an expedited and streamlined summary judgment briefing schedule. This demonstrated to this Court that the Surrogate's Court is committed to the swift administration of justice. This Court had no reason to believe that the state supreme court is not also well-situated to efficiently and justly administer the receivership. New York State law is all-encompassing. That certain systems under state law may differ from those systems of this forum does not mean those state court forums are categorically ill-suited to service the needs of both the Debtor and his creditors.

The Court heard the Objecting Parties' concerns regarding the purported preferential treatment of creditors under the Trust. But the Trustee agreed on the record — both in writing and at oral argument during the January 30 Hearing — to an interpretation of the Trust that commits to using the Trust's assets to satisfy all "enforceable" claims (which the Trustee and her counsel equated to valid and liquidated claims), not only those expressly enumerated. [Jan. 30, 2026 Hr'g Hearing Tr., ECF No. 96 at 54]. Where the movant can demonstrate that the alternative forum will not prejudice recoveries based upon a creditor's priority or create additional obstacles to recovery only for certain creditors, the court is inclined to favor abstention. *See Traxcell*, 657 B.R. at 465 (finding the second factor favored abstention where the court believed the door to creditor recovery

was open wider in the alternative receivership forum, noting that "[u]nlike some receivership orders, which exclusively favor judgment creditors, the Receivership Order here only directs the turnover of the patents to the receiver without directing the return of the sale proceeds to *only* the Judgment Creditors. This leads the Court to believe that the Non-Judgment Creditors might also be able to seek payment from a portion of any sale proceeds. If the patent litigation claims are as valuable as Traxcell suggests, their sale would net ample funds with which to pay the Non-Judgment Creditors. Traxcell's Plan, by comparison, seeks to pay the Non-Judgment Creditors' claims through litigation, which, in its current posture, is highly uncertain to net any recovery"). Here, the door to creditor recovery was not any less wide outside of bankruptcy.

The Court also heard the Objecting Parties' concerns regarding the purported lack of transparency into the claims allowance process in the Surrogate's Court, and the general lack of notice and responsiveness from the Trustee and her retained professionals. [Jan. 30, 2026 Hr'g Tr., ECF No. 96 at 95]. Specifically, counsel to Replacement Associates LLC expressed its preference to remain before this Court because it believed it was afforded greater notice with an opportunity to be heard, as well as clarity with respect to the claims allowance process. [*Id*. at 96-97]. But the Trustee again represented to this Court on the record that Replacement Associates LLC (and other claimholders) had been responded to — it was just that their claims were disputed, so they had been engaged in litigation rather than claims allowance and payment – and that the claims allowance process in the Surrogate's Court was transparent, even if different from the claims process in this Court. [*Id*. at 54-55].

The Trustee's representations were meaningful for another important reason: if this Court were to deny the Motion but grant the motion to dismiss the Avoidance Action, preserving the Trust and all of its assets, the Debtor's creditors would not know whether to pursue their claims in

this Court against the Debtor and his estate, or in the Surrogate's Court against the Trust. Even while the Debtor and Trustee were litigating the Avoidance Action, creditors would not know where to assert their claims, or which court would determine whether they were timely and/or allowable. When presented with that question during oral argument at the January 30 Hearing, Debtor's counsel was unable to answer with certainty. [Jan. 30, 2026 Hr'g Tr., ECF No. 96 at 66-67]. To be fair, it is not a simple question, and relief from the automatic stay under 11 U.S.C. § 362 may have offered a less direct pathway to an answer, but that relief was not before the Court and further demonstrated the inefficiency of parallel proceedings. It was the Court's view that simultaneous estate proceedings would only confuse the claims process to the detriment of the Debtor and creditors.

For these reasons, the Court found that the second factor favored abstention.

#### 3. *Factors 3, 4, 5, and 6 — Necessity of Federal Forum; Alternative Means to Achieve an Equitable Result; Possibility of an Out-of-Court Arrangement; and Status of Non-Federal Insolvency Proceedings*

The Trustee, Joinder Parties, and Proponent Parties submitted that the third, fourth, fifth, and sixth factors favored abstention for many of the same reasons articulated as to the first and second factors. As to the third and fourth factors — necessity of federal forum and alternative means to achieve an equitable result — they submitted that this bankruptcy proceeding, and the incumbent protections afforded under federal law, are not needed to achieve a just and equitable result: an alternative means to a result that maximizes value and facilitates equitable distributions could be achieved under the Trust. [Jan. 30, 2026 Hr'g Tr., ECF No. 96 at 21]. Further, as to the fifth and sixth factors — the possibility of an out-of-court arrangement and the status of non-federal insolvency proceedings — they submitted that the Trust offers a less expensive out-of-court arrangement to serve all interests, and that the state court proceedings had sufficiently

progressed such that starting afresh in bankruptcy would simply add unnecessary cost and delay. [ECF No. 14 at 28-29].

The Objecting Parties attacked these propositions. First, they submitted that only the federal bankruptcy forum can ensure transparency and fairness as to all creditors. [ECF No. 32 at 16-17; ECF No. 34 at 6]. Second, they posited that only the federal bankruptcy forum offers a centralized proceeding to administer the Debtor's federal tax debts. [Jan. 30, 2026 Hr'g Tr., ECF No. 96 at 50]. Third, they argued that the Trust's longevity and a quick and efficient sale of the Sagaponack Property are not guaranteed. [ECF No. 32 at 16]. Fourth, they submitted an equitable result cannot be achieved outside of this Court for creditors not expressly named in the Trust. [*Id.* at 49-50].

The Court found these arguments unavailing. "The third, fourth, fifth, and sixth factors all generally concern whether bankruptcy court is comparatively the appropriate, desirable, or efficient forum for distribution to creditors." *Traxcell*, 657 B.R. at 465 (citing *In re Paper I Partners, L.P.*, 283 B.R. 661, 679 (Bankr. S.D.N.Y. 2002)). The Objecting Parties failed to rebut the proposition that, comparatively, the state court proceedings are a more than capable forum (and ones already underway) to adjudicate the Trust and administer recovery to all creditors.

First, as represented by Trustee's counsel during oral argument, transparency for creditors exists in the Surrogate's Court and state supreme court through accountings and notice requirements to creditors. The state court proceedings, and the actions of the Trustee and the Receiver, are not cloaked in secrecy. In fact, there was an accounting that the Trustee represented had been on file in Surrogate's Court since May 2025. [Jan. 30, 2026 Hr'g Tr., ECF No. 96 at 91]. It was evident that this Court was not the sole available forum offering transparency and notice to creditors.

Second, a centralized proceeding to administer the Debtor's federal tax debts was not essential to resolving those claims when the Trust was sufficiently funded to make the IRS whole. While the Debtor's federal tax claims may be designated as "disputed" on the Debtor's Schedules, the Debtor had not represented that access to this forum's claims objection process was critical to the interests of the Debtor. Neither had the Debtor demonstrated that the IRS's claims could not otherwise be addressed through the Trust or the Surrogate Court's claims administration process.

Third, speculation about whether the Surrogate's Court may in the future dissolve the Trust did not weigh in favor of denying the Motion. As to the fifth factor, the Court was less concerned about there being certainty of an out-of-court resolution and more focused on finding a cognizable possibility. The Court acknowledged that there are no guaranties. Should the Trust endure, it would present a less expensive out-of-court arrangement which better serves all interests in the case. In addition, the Court noted another out-of-court arrangement in place serving the interests of the parties — namely, the Possession Proceeding Stipulation, which fast-tracked a summary judgment ruling in the Possession Proceeding. Indeed, expedited clarity on whether the Trustee may proceed with the sale of Sagaponack Property would serve to the benefit of the Debtor and his creditors. This Court recognized that the Surrogate's Court is the appropriate forum to make that determination.

Fourth, for the same reasons previously articulated, the Trustee's representation that the Trust's assets will be used to satisfy all creditors holding "enforceable" claims (equating to valid and liquidated claims) dispelled any purported lack of clarity as to whether the Trust allows the Trustee to discriminate against those creditors not expressly enumerated therein. [Jan. 30, 2026 Hr'g Tr., ECF No. 96 at 19]. The Trustee agreed to pay all claims as they become "enforceable." [*Id*. at 54-55]. That interpretation of the Trust continues to serve the most important purpose

underlying its creation: to satisfy the Debtor's debts. This Court noted that those holding unliquidated claims are not foreclosed from obtaining recoveries outside of the bankruptcy process.

For these reasons, the Court found that the third, fourth, fifth, and sixth factors favored abstention.

***4. Factor 7 — Purpose of the Bankruptcy***

The Trustee, Joinder Parties, and Proponent Parties submitted that the seventh and final factor regarding the purpose for which bankruptcy jurisdiction has been sought favors abstention, because the commencement of this bankruptcy, according to these parties, was the Debtor's attempt to forum-shop a two-party dispute without a legitimate reorganizational purpose. The Objecting Parties argued that, to the contrary, this bankruptcy was not commenced for the sake of forum shopping, but rather to preserve the Debtor's avoidance claims under 11 U.S.C. § 548, which transfers occurred exactly two-years prior to the Petition Date. [Jan. 30, 2026 Hr'g Tr., ECF No. 96 at 38-39]. The Objecting Parties also argued that this is not a "two-party dispute," as evidenced by the activity in the case with respect to the taxing authorities, Replacement Associates LLC, and the Board of Managers. [*Id*. at 65].

"A significant factor in favor of dismissing a case pursuant to § 305(a)(1) is the absence of a true bankruptcy purpose, particularly where the bankruptcy case constitutes a two-party dispute between the debtor and a single creditor." *In re Efron*, 529 B.R. 396, 406 (B.A.P. 1st Cir. 2015); *see also Traxcell*, 657 B.R. at 465 ("The seventh factor concerns the purpose for which the debtor sought bankruptcy protection and is essentially a test of the debtor's good faith.").

Without opining on the legitimacy of the claims asserted in the Avoidance Action or the Debtor's good faith (or lack thereof), the Court concluded that the Motion's characterizations of

this case as a "two-party dispute" was an oversimplification. It was difficult for the Court to view this case as a two-party dispute, especially where the Trust is not a creditor, and even the creditor body is divided, with at least two creditors forming a faction opposed to the Motion. Furthermore, the Trustee requires a receivership to liquidate real property assets subject to multiple layers of allegedly secured claims. Likewise, it was difficult for the Court to view the commencement of this case as a *blatant* act of forum shopping lacking any legitimate reorganizational purpose. Indeed, as highlighted by Debtor's counsel at oral argument during the January 30 Hearing, the Debtor had not yet received an unfavorable ruling from the Surrogate's Court, and there are tools available here which are not available in a state court proceeding. [Jan. 30, 2026 Hr'g Tr., ECF No. 96 at 44, 49]. There is nothing easy or convenient about filing for bankruptcy or taking on the obligations of a debtor-in-possession, and this Court did not believe that the Debtor took that drastic step lightly.

While at the time the Court was not prepared to conclude that the seventh factor heavily favored abstention because this case was not clearly a two party dispute or a *blatant* act of forum shopping, the Court did not give this factor greater weight than the others.

**B. Abstention by Suspension Instead of Dismissal**

Having found the factors, on balance, weighed in favor of abstention, the Court's focus shifted to whether both the Debtor and creditors would be better served by dismissal of this bankruptcy case, or suspension of all proceedings therein. After thoughtful consideration, the Court found that the suspension of all proceedings in this case for a limited period, under the parameters later discussed, better served all interests.

"The decision whether to suspend or dismiss often depends in part on whether it is important to preserve a Bankruptcy Code reachback period." 2 COLLIER ON BANKRUPTCY ¶

305.01[1] (16th ed.). Here, a similar interest of the Debtor is served by suspension without prejudice to the creditors. The Court heard the Debtor's concerns that dismissal of this case, while without prejudice to the Debtor's right to refile at a later date, would nevertheless foreclose the Debtor's opportunity to pursue reorganization by prevailing on his avoidance claims under 11 U.S.C. § 548 because, by then, they would be time-barred. Suspending all proceedings, including the Debtor's Avoidance Action, preserves those claims from being time-barred in the event the Court determined at a later date that reactivation of this bankruptcy is warranted.

While it is true that the Debtor would theoretically still be able to pursue alternative relief in a later bankruptcy filing under New York's Uniform Voidable Transactions Act through 11 U.S.C. § 544, it was difficult for this Court to take the position that the Debtor's loss of a potential right to relief under 11 U.S.C. § 548 as a result of dismissal better serves the Debtor's interests. Importantly, 11 U.S.C. § 305(a)(1) instructs this Court to consider the interests of *both* the Debtor and creditors. The creditors did not stand to lose much, if anything, by suspension for a finite period. Suspension would permit them to go back to the state courts and proceed with resolving their claims (which they submitted will be accomplished efficiently and expeditiously) as if no bankruptcy proceedings were pending. If all worked out in the state courts during the Suspension Period such that assets were liquidated for the benefit of the Debtor's creditors, those creditors were afforded transparency and a full and fair opportunity to be heard, and those creditors were satisfied from the Trust's assets to the extent they possessed enforceable claims, then dismissal might very well make sense in the future. At the time of the initial suspension, the Court declined to commit to any result that needlessly injured the future rights of the Debtor.

Authority exists for the exercise of this approach. In *In re Mazzacone*, 183 B.R. 402 (Bankr. E.D. Pa 1995), *aff'd*, 200 B.R. 568 (E.D. Pa. 1996), the court suspended the chapter 11 case in

light of state court proceedings for a finite period of time. In order to discourage delay in state court or the potential for abuse by the debtor, the court directed the parties to appear six months later and provide a status report on pertinent developments, at which time the court would then consider whether to dismiss the case, convert it to a chapter 7 case, or continue the suspension for another finite period. *Id.* at 422.

This Court believed that the approach taken in *Mazzacone* was sensible and made economical use of the parties' (and the Court's) time and resources. The Court also believed that this approach was within the Court's equitable authority under 11 U.S.C. § 105(a) to craft a bespoke solution tailored to the particular needs of this case. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."). In fact, the United States Bankruptcy Court for the District of New Jersey used suspension to address the unique issues affecting *In re Modell's Sporting Goods, Inc., et al.* [Case No. 20-14179 (VFP)] as a result of the COVID-19 pandemic, and temporarily suspended the debtors' chapter 11 cases under 11 U.S.C. §§ 105 and 305. *See Order Temporarily Suspending the Debtors' Chapter 11 Cases Pursuant to 11 U.S.C. §§ 105 and 305*, *In re Modell's Sporting Goods, Inc., et al.*, Case No. 20-14179, ECF No. 166 (Bankr. D. N.J. March 27, 2020) (temporarily suspending debtors' chapter 11 cases in light of unique challenges posed by the COVID-19 pandemic shutdown and related issues). Although the suspension period there was short, it was extended beyond the initial period and offered a thoughtful solution that addressed the concerns of substantially all of the constituents involved. The *Modell's* suspension order also demonstrates the

leeway afforded to bankruptcy courts in determining the parameters of abstention and a temporary suspension. *See also* 2 COLLIER ON BANKRUPTCY ¶ 305.01[1] (16th ed.) (noting that "[t]he remedy authorized in section 305(a) is *extremely broad*") (emphasis added).

This Court therefore suspended all proceedings in this case for a finite period of time pursuant to 11 U.S.C. §§ 105(a) and 305(a), pending the Status Hearing. All interested parties were given the opportunity to file and serve written status reports regarding developments in the state court proceedings relevant to this case no later than seven days before the Status Hearing. The Court would then consider whether to dismiss the case, reactivate all proceedings, or continue the suspension for another finite period. Additionally, the Court reserved any ruling with respect to that portion of the Motion seeking dismissal for cause under 11 U.S.C. § 1112(b) until after the Status Hearing, and other logistical and procedural items with respect to the main case and related adversary proceedings were clarified through the Suspension Order.

## II. CONTINUED SUSPENSION

### A. The Present Circumstances Continue to Favor Abstention

The Court, now presented with the question of whether to dismiss the case, reactivate all proceedings, or continue the suspension for another finite period, conducts the same analysis it did at the time of the initial suspension. The calculus is no different, and the seven-factor test applied above still dictates.

The present circumstances, now framed in the context of seven months' worth of new developments, continue to favor abstention and do not warrant reactivating these proceedings.[3] The Court incorporates its previous abstention analysis and briefly readdresses each factor only to the extent the updated record warrants discussion of additional considerations.

[3] The Court further reserves any ruling with respect to that portion of the Motion seeking dismissal for cause under 11 U.S.C. § 1112(b).

### 1. *Factors 1 and 2 — Economy and Efficiency of Administration; and Existence of an Alternative Forum*

As to the first and second factors — economy and efficiency of administration, and existence of an alternative forum — the Court finds that economic and efficient conditions remain intact to address the Debtor's debts outside of bankruptcy, and the alternative forums available are mostly working effectively under applicable laws. The suspension worked as intended — it returned the parties to their established forums and paved the way for claims resolution without need for parallel proceedings and duplicative administration. Of course, the process was not perfect, but contrary to the Debtor's assertions, these established forums are not fundamentally broken.

The Court first focuses on what has worked so far. Most parties agree that suspension brought the parties together, incentivizing them to pursue resolutions in good faith under the premise that failure to make meaningful progress during the Suspension Period could result in reactivation of the bankruptcy case. Even the Board of Managers, who previously opposed the Motion, interposed its support of continuing suspension. [Sept. 16, 2026 Hr'g Tr., ECF No. 111 at 67-68]. The Status Reports reflect that, among other things, during the Suspension Period: (i) the Debtor surrendered possession of the Sagaponack Property, and the Possession Proceeding was discontinued with prejudice; (ii) the Trustee began marketing the Sagaponack Property for sale at a listing price of $79.5 million; (iii) the Trust arranged for and made payments to satisfy the Debtor's debts with respect to certain legal fees; (iv) the Stephen Perlbinder creditors and the Trust reached a tentative settlement of the principal family real estate disputes, which would resolve the largest creditor group's claims; (v) the Trust engaged in settlement discussions with the West creditors; and (vi) the Receiver attempted to settle the dispute with the Board of Managers. [ECF No. 105 at 3; ECF No. 108 at 1; ECF No. 107 at 2, 6, 8].

The Court also hears the Debtor's concerns, who in his Status Report insists that the Trustee has failed to properly administer the Trust and ensure transparency, as promised at the January 30 Hearing. [ECF No. 105 at 8-9]. The Debtor submits that the Trust has, among other things: (i) failed to pay any creditors despite demand; (ii) failed to make mandatory distributions to the Debtor, as required by the Trust, leaving the Debtor unable to afford basic living expenses; (iii) failed to address the Debtor's increasing debt burdens by letting additional taxes and penalties accrue; (iv) intentionally excluded the Debtor from settlement discussion and declined to provide the Debtor with any updates; (v) failed to provide an updated accounting despite multiple demands; and (vi) denied the Debtor's access to funds that the Debtor maintains he is due as a beneficiary of his parents' estate. *Id*.

The Status Hearing revealed that Debtor's counsel's concerns and issues really point to Debtor's state court counsel, not the economy and efficiency of the Trust and its administration or the state court proceedings. In fact, the Court heard at the Status Hearing that the Debtor failed to raise any of these issues in the state courts. [Sept. 16, 2026 Hr'g Tr., ECF No. 111 at 20]. Apparently, as represented by Debtor's bankruptcy counsel, at some point during the Suspension Period, the Debtor's state court litigation counsel ceased working for lack of payment. [*Id*. at 32]. It seems then that all parties meaningfully engaged with the process afforded by suspension *except* for the Debtor.[4] Indeed, the Debtor's reputation for volatility and obstructive conduct is the stated reason why he was excluded from productive resolution talks during the Suspension Period. [*Id*.

---

[4] The Court recognizes that this may not be of the Debtor's own volition – his state court counsel is refusing to work until he is paid, and the Trust is asserting that many of the fees counsel asserts are owed were incurred contesting the validity of the Trust, expenses the Trust does not believe it should be responsible for paying. That said, there are likely other reasons the Debtor is not being included or engaged in the process, as discussed herein. Regardless, this is not a reflection of the inefficiency or inadequacy of the Trust, the Trust's professionals, or the state court judicial system.

at 62-63]. Even Debtor's counsel had to disclose to the Surrogate's Court that the Debtor represented material facts that he knew to be false. [*Id*. at 52]. The Debtor will not be rewarded for his behavior and inaction, and this Court will not reactivate this bankruptcy based on alleged digressions for which the Debtor is responsible.[5] For these reasons, the Court finds the first factor favors continued abstention.

Last, with respect to the existence of an alternative forum, which the Court believes in this case overlaps with economy and efficiency of administration, the Court finds that little additional discussion is needed beyond its reasoning for the initial suspension. The Debtor and Replacement Associates, LLC complain of lack of transparency, but the Court remains unpersuaded for two reasons. First, the Debtor expressed grievances with the Trust and Surrogate's Court, because there was no updated accounting or inventory provided despite repeated demands. The Status Hearing revealed that during the Suspension Period, Trustee's counsel attempted to deliver an updated accounting via email to Debtor's counsel, but the accounting was inexplicably not received. Whatever the reason, Trustee's counsel agreed on the record to resend the accounting. Second, Replacement Associates, LLC complains of lack of responsiveness from the state court presiding over its case. It seems that Replacement Associates, LLC's desire to reactivate this case is essentially motivated by forum shopping. While the delay is clearly frustrating and unfortunate for Replacement Associates, LLC, this creditor's situation is an outlier and does not outweigh the balance of the benefit continued suspension would confer to the other parties.

[5] As the U.S. Trustee noted at the Status Hearing, even if the Court were to reactivate this bankruptcy to proceed under chapter 11, it is unlikely that the Debtor could remain a debtor-in-possession. [Sept. 16, 2026 Hr'g Tr., ECF No. 111 at 78-79]. In the event a chapter 11 trustee were appointed, the costs of proceeding in bankruptcy would severely increase for the Debtor. [*Id*. at 60].

Again, this Court holds strong in its belief that the established forums remain well-situated to efficiently and justly administer their respective matters. For these reasons, the Court finds the first and second factors favor continued abstention.

### 2. *Factors 3, 4, 5, and 6 — Necessity of Federal Forum; Alternative Means to Achieve an Equitable Result; Possibility of an Out-of-Court Arrangement; and Status of Non-Federal Insolvency Proceedings*

The Court finds that these factors — factors 3 (necessity of federal forum), 4 (alternative means to achieve an equitable result), 5 (possibility of an out-of-court arrangement) and 6 (status of non-federal insolvency proceedings) — favor continued abstention for the same reasons articulated with respect to the first and second factors. In addition, the passage of time allowed the parties to make meaningful progress in the alternative forums available with the possibility of a reactivated bankruptcy in the background. By way of example and not limitation, Trustee's counsel described in the Status Report and at the Status Hearing progress made with respect to both the Debtor's surrender of the Sagaponack Property and a possible global settlement structure with Steven Perlbinder and certain other creditors that would "end all disputes and litigation" with Steven Perlbinder and those other creditors. [ECF No. 107, pp. 2, 4]. The fact that the Debtor was not included in those settlement discussions does not discount their significance or invalidate the positive progress achieved. Indeed, according to the Trustee's Status Report: "If the proposed settlement (which is extremely complex) becomes effective on the terms contemplated with Steven's Side [defined therein], all of the claims asserted against the Debtor by Steven's Side [defined therein], which compromise a substantial majority of claims filed in the Debtor's Chapter 11 case . . . in the approximate amount of $397 million, will be eliminated and the Trust will be left with sufficient assets to satisfy all of the Debtor's debts in due course." [ECF No. 107, p.5]. The Suspension Order achieved the desired effect: creditors and other adversaries negotiated with

the Trust outside of bankruptcy to achieve an equitable result. Accordingly, the Court believes that factors three, four, five, and six continue to favor abstention, perhaps even more so with this progress in the interim.

### *3. Factor 7 — Purpose of the Bankruptcy*

As to the seventh factor — purpose of the bankruptcy — the Court still declines to conclude that the seventh factor heavily favors abstention. The updated record from the Status Reports and the Status Hearing has not moved the Court any closer to viewing this case as a "two-party dispute" or a *blatant* act of forum shopping devoid of any legitimate reorganizational purpose. Multiple litigations remain pending (some remained stagnant, but most seem to have progressed), and the Debtor maintains the Avoidance Action has merit and that he has a right to a fresh start even if he is unsuccessful in prosecuting his claims. [ECF No. 105 at 2-8; Jan. 30, 2026 Hr'g Tr., ECF No. 96 at 74].

## B. The Present Circumstances Favor Continued Suspension Instead of Dismissal

Having found the factors, on balance, continue to weigh in favor of abstention, the Court now revisits the question of whether both the Debtor and his creditors would be better served by dismissal of this bankruptcy case, or continued suspension of all proceedings. The Court incorporates its previous suspension analysis and addresses new arguments and facts raised in the Status Reports and at the Status Hearing.

The Court was clear in its initial decision to suspend that preserving those claims asserted by the Debtor in the Avoidance Action from being-time barred by dismissal was the guiding consideration. Again, without taking a position on the merits of those claims, the Court remains guided by that consideration. The balance of the harm to the Debtor by consequence of dismissal far outweighs any potential harm to the creditors by consequence of another finite suspension. The

Court believes that the progress made during the Suspension Period will likely continue, in part because the parties will be working under a deadline by which they will need to return to this Court to report on their status, but also because these are complicated circumstances which require additional time to achieve their desired results.

Knowing the Court's previous position, the Trustee leads a new charge by urging this Court to follow the course taken in *In re Nussbaum Lowinger LLP*, Case No. 26-22383 (SHL), 2026 WL 2364645 (Bankr. S.D.N.Y. Aug. 14, 2026), a recent decision issued during the Suspension Period. There, the bankruptcy court abstained and dismissed the jointly administered cases in favor of the assignment for the benefit of creditors ("ABC") proceeding that had been pending in state court. The common narrative is clear — a complex chapter 11 case commenced alongside preexisting non-bankruptcy proceedings already tasked with administering claims, liquidating assets, and facilitating equitable distributions. The *Nussbaum* court dismissed the bankruptcy proceedings because, among other things, the assignee had made such significant progress during the ten months preceding the bankruptcy filings that "any potential advantages of a bankruptcy proceeding [were] insufficient to overcome the large loss of time and money that would result from starting from scratch in a new forum." *In re Nussbaum Lowinger LLP*, 2026 WL 2364645, at *6. The Trustee argues that given the significant progress made prior to and during the Suspension Period, dismissal here is likewise appropriate.

This Court believes *Nussbaum* is distinguishable from the facts of this case. As an initial matter, the *Nussbaum* court's analysis was not complicated by the consideration of whether to preserve a Bankruptcy Code reach-back period. Additionally, the Trustee's reliance on *Nussbaum* severely understates the key distinctions between an ABC proceeding and the non-bankruptcy proceedings here. An ABC proceeding is a centralized insolvency proceeding. *See Compagnia*

*Distribuzione Calzature, S.R.L. v. PSF Shoes Ltd.*, 206 A.D.2d 343, 344 (N.Y. App. Div. 2d Dep't 1994) ("A general assignment for the benefit of creditors is an assignment by a debtor transferring all of his or her property in general terms to an assignee in trust for all creditors of the debtor, or a voluntary transfer by a debtor of all his property to a trustee of his own selection, for administration, liquidation, and equitable distribution among his creditors."). The assignee generally owes its fiduciary duty to the assignment estate's creditor body. By contrast here, the same tasks being achieved by the ABC proceeding in *Nussbaum* are being pursued across various proceedings, further decentralized by the concurrent roles of the Trustee and the Receiver, whose fiduciary duties do not necessarily align. Accordingly, the Court believes another finite suspension period better serves the interests of the Debtor and his creditors to ensure that the system continues to work despite its unique complexity. Furthermore, the fact that there are several state court proceedings working in tandem warrants additional time to secure meaningful progress.

The Court will therefore further suspend all proceedings in this case for another finite period of time, pending another status hearing to be held in April 2027. All interested parties will be accorded another opportunity to file and serve written status reports regarding developments in the state court proceedings relevant to this case no later than seven days before the status hearing. The Court will then consider whether to dismiss the case, reactivate all proceedings, or continue the suspension for another finite period.

For the avoidance of doubt:

1. The Suspension Order shall remain in full force and effect except to the extent modified by any further order of the Court;

2. The main bankruptcy case shall remain considered and treated in all respects as if it were dismissed pending a further status hearing. Therefore, the parties may continue to proceed forward with their state court proceedings without need to seek relief from the automatic stay;

3. All adversary proceedings held in abeyance pursuant to the Suspension Order shall remain held in abeyance during the continued Suspension Period, and nothing herein shall be construed as time-barring any causes of action asserted in those adversary proceedings in the event they are later reactivated;

4. Any removed action returned to state court pursuant to the Suspension Order shall remain in state court during the continued Suspension Period, and the returned action may continue to proceed without need for the parties to seek relief from the automatic stay. If the Debtor's main case is reactivated after the status hearing in April 2027 or thereafter, the parties may remove the returned action to this Court subject to all parties' rights, remedies and defenses under applicable law; and

5. With respect to professional fees and other administrative expense claims unique to this bankruptcy case, the appropriate parties may file applications for allowance of compensation and reimbursement of expenses for the period from the Petition Date through the Suspension Date on or before December 31, 2026.

## CONCLUSION

The Court will enter an order consistent with the foregoing.

**Dated: Central Islip, New York**
**October 21, 2026**

Sheryl P. Giugliano
United States Bankruptcy Judge